# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| UNITED STATES OF AMERICA | Honorable Douglas E. Arpert |
| v. | Mag. No. 20-6004 (DEA) |
| KEVON BELFON | **CRIMINAL COMPLAINT** |

I, Renee Repasky, being duly sworn, state that the following is true and correct to the best of my knowledge and belief:

**SEE ATTACHMENT A**

I further state that I am a Special Agent with the Bureau of Alcohol, Tobacco, Firearms and Explosives, and that this Complaint is based on the following facts:

**SEE ATTACHMENT B**

continued on the attached pages and made a part hereof.

s/ Renee Repasky
_____
Renee Repasky, Special Agent
Bureau of Alcohol, Tobacco,
Firearms and Explosives

Attested to by telephone pursuant to
Fed. R. Crim. P. 4.1(b)(2)(A)
on December 1, 2020,
in the District of New Jersey

Honorable Douglas E. Arpert
United States Magistrate Judge          S/DOUGLAS E. ARPERT
Name and Title of Judicial Officer      Signature of Judicial Officer

**ATTACHMENT A**

On or about July 24, 2020, in Ocean County, in the District of New Jersey and elsewhere, the defendant,

KEVON BELFON,

knowing that he had previously been convicted of a crime punishable by imprisonment for a term exceeding one year in a court in the State of New York, did knowingly possess a firearm, namely, a Taurus, model PT111, 9 millimeter semi-automatic pistol bearing serial number ABC398644, and the firearm was in and affecting commerce.

In violation of Title 18, United States Code, Section 922(g)(1).

**ATTACHMENT B**

I, Renee Repasky, am a Special Agent with the Federal Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). I am fully familiar with the facts set forth herein based on my own investigation, my conversations with other law enforcement officers, and my review of reports, documents and other items of evidence. Where statements of others are related herein, they are related in substance and in part. Because this complaint is being submitted for a limited purpose, I have not set forth each and every fact that I know concerning this investigation. Where I assert that an event took place on a particular date, I am asserting that it took place on or about the date alleged.

1. On or about July 24, 2020, a Stafford Township Police Department officer ("Officer-1") was on routine patrol in a marked police vehicle and traveling on Route 72 in Stafford Township, New Jersey. While on patrol, Officer-1 observed a white BMW sedan (the "BMW") cross over the double yellow center lines. Consequently, Officer-1 activated his patrol vehicle's emergency lights and initiated a motor vehicle stop of the BMW. Upon approaching the BMW, Officer-1 observed two occupants: the driver, subsequently identified as defendant KEVON BELFON ("BELFON"), and a front-seat passenger not charged as a defendant herein, referred to as Individual-1. Officer-1 advised BELFON of the reason for the stop and requested BELFON's driver's license. BELFON responded that he did not have his driver's license with him and, instead, provided Officer-1 with a false name and date of birth. While speaking with BELFON, Officer-1 detected the odor of an alcoholic beverage emanating from the vehicle, and observed, in plain view, an open container of alcohol on the front passenger side floor of the vehicle, as well as two disposable plastic cups containing a reddish-brown liquid in the front cup holders of the vehicle. Officer-1 also noted that BELFON's eyes were watery and bloodshot, and that BELFON was slurring his speech while speaking with the officer. When asked about the contents of the plastic cups, BELFON responded that they contained cranberry juice and a mixed drink.

2. A short time later, other law enforcement officers arrived at the scene, and Officer-1 directed BELFON to exit the vehicle. Officer-1 then administered a series of field sobriety tests to BELFON. Based on BELFON's performance during the field sobriety tests, as well as Officer-1's observations during the stop, BELFON was placed under arrest for driving while intoxicated. A search of BELFON's person incident to arrest yielded a small digital scale.

3. As BELFON was being placed under arrest, officers asked Individual-1 to exit the BMW. BELFON advised Individual-1 to remove all of her belongings from the BMW, and specifically instructed Individual-1 to take the "fanny pack in the back." One of the officers advised Individual-1 that she could take the fanny pack from the vehicle, but only if the officer examined its

contents first. In response, Individual-1 stated that she did not want the fanny pack because it did not belong to her.

4. BELFON was secured in the rear compartment of Officer-1's patrol vehicle. Shortly thereafter, Individual-1 asked the officers if she could speak with BELFON so she could obtain the passcode to BELFON's cell phone and place a call with BELFON's phone to let someone know about his arrest. The officers permitted Individual-1 to speak with BELFON through the open rear window of Officer-1's vehicle, which was equipped with an audio and video recorder that captured BELFON's conversation with Individual-1. During this conversation, BELFON whispered to Individual-1, as relevant here: "Fanny pack"; "You got it? You got the fanny pack?"; and "Get the fanny pack."

5. Thereafter, officers conducted a search of the BMW. During the search, officers located a plastic bag containing suspected marijuana under the front passenger seat, a plastic bag containing a metal marijuana grinder on the rear passenger seat, and a fanny pack on the rear passenger seat. A search of the fanny pack revealed a Taurus, model PT111, 9 millimeter semi-automatic pistol bearing serial number ABC398644 (the "Firearm"). The Firearm was loaded with one round of 9 millimeter ammunition in the chamber and an additional nine rounds of 9 millimeter ammunition in the magazine. Officers also located inside the fanny pack the following three items: (i) a New Jersey driver's license issued in the name of "Joseph Favio," but bearing BELFON's photograph; (ii) a New Jersey driver's license issued in the name of "Keon Belfon," but bearing BELFON's photograph; and (iii) a New York driver's license issued in BELFON's name and bearing BELFON's photograph. When an officer removed the Firearm from the BMW and rendered it safe, BELFON yelled out, "That's me officer, that's not even on her…That's on me, that's not on her."

6. The Firearm was manufactured outside the State of New Jersey and, therefore, must have necessarily traveled in interstate commerce before on or about July 24, 2020.

7. I have reviewed the relevant criminal history records for BELFON. That review revealed that on or about July 17, 2012, BELFON was convicted in the United States District Court for the Eastern District of New York of conspiracy to import cocaine, in violation of 21 U.S.C. §§ 952(a), 960(a)(1), and 960(b)(3), a crime punishable by imprisonment for a term exceeding one year. In addition, on or about September 3, 2015, BELFON was convicted in the Supreme Court of New York, Kings County, of attempted criminal possession of a handgun, in violation of N.Y. Penal Law 110-265.03(1)(b), a crime punishable by imprisonment for a term exceeding one year, and was sentenced to three years' imprisonment.